# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. S. ROBERTSON, Minor.

UNPUBLISHED
September 12, 2019

No. 348092
Wayne Circuit Court
Family Division
LC No. 18-000286-NA

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

Respondent-mother appeals the trial court's order terminating her parental rights to her minor child under MCL 712A.19b(3)(g) (proper care and custody), (i) (parental rights to one or more siblings terminated due to neglect or abuse and parent has failed to rectify conditions that led to prior termination), and (j) (reasonable likelihood of harm to child if returned).[1] On appeal, respondent-mother challenges the trial court's findings as to statutory grounds and best interests. While we conclude that any error regarding statutory grounds was harmless, the trial court's best-interest determination was clearly erroneous because the court failed to expressly address relative placement. We affirm in part, vacate in part, and remand for further proceedings. We retain jurisdiction.

## I. BACKGROUND

This case arises out of the termination of respondent-mother's parental rights to her infant daughter. Child Protective Services (CPS) worker, Gwendolyn Ervin, filed a petition in February 2018, alleging physical abuse and threatened harm to the minor child, and requested permanent custody of the minor child and the termination of respondent-mother's parental rights in the initial petition.[2] According to the petition, the minor child tested positive for marijuana and cocaine at birth, and CPS was notified immediately. The petition also alleged that respondent-mother's parental rights to her two older children were terminated in 2011 as a result

---

[1] While respondent-mother challenges subsection (j), we note that the trial court did not expressly rule on this statutory ground.

[2] The decision to file a permanent custody petition against respondent-mother was made because she had two prior terminations, and DHHS's policy was to seek termination in the initial petition under such circumstances. The minor child's father was also named in the petition, but the petitioner only sought temporary custody as to him. Any issues regarding the father are not present on appeal.

of a 2009 CPS investigation for abandonment. Moreover, the petition alleged that respondent-mother had multiple criminal convictions in Michigan, which included drug crimes, delinquency of a minor, assault of a police officer, fleeing police, and open intoxicants in a vehicle. She also had 40 theft, assaultive, and other crimes in the state of Virginia. Respondent-mother had also absconded from parole on a felony drug conviction out of Lenawee County. The petition requested the termination of respondent-mother's parental rights pursuant to MCL 712A.19b(b)(*i*), (g), (i), and (j).

Respondent-mother did not attend the majority of the child protective proceedings, including the joint adjudication and dispositional hearing. She was also uncooperative throughout the CPS investigation, beginning with her refusal to allow the minor child to be placed under the care of CPS. Once respondent-mother let her child go, the child was placed with the paternal grandmother.

In November 2018, the trial court held a joint adjudication and dispositional hearing as to both respondent-mother and the father. Neither parent attended the proceeding. After questioning the attorneys, the trial court determined that respondent-mother had refused to attend the adjudication and dispositional hearing, and therefore, it decided to proceed despite her absence. During opening statements, the attorney for DHHS stated that the grounds for termination of respondent-mother's parental rights were (1) substance abuse including the minor child testing positive for marijuana and cocaine during birth, (2) lack of suitable housing, (3) and two prior terminations regarding the minor child's siblings. The attorney for DHHS further requested that the court conclude that termination was in the minor child's best interests "despite the placement with a relative." The lawyer-guardian ad litem further noted that respondent-mother had 40 convictions in the state of Virginia on various crimes.

CPS worker Ervin testified first, explaining that her involvement began when there was a complaint submitted alleging threatened harm due to the minor child testing positive for marijuana and cocaine at birth. After receiving the complaint, Ervin reached out to respondent-mother "to complete a home visit, to at least confirm if the home was appropriate." Ervin conducted the home visit on January 29—nine days after the minor child was born. Respondent-mother and Ervin reviewed safe sleep information, a safety plan, and respondent-mother completed a Forensic Fluids drug screen. At the time, respondent-mother had appropriate housing. Although she admitted to using marijuana, she denied ever using cocaine. Moreover, respondent-mother said that once she learned she was pregnant she stopped using marijuana. Ervin said that respondent-mother did not stop smoking marijuana until the fourth month of her pregnancy, which is when she learned she was pregnant.

Ervin also stated that respondent-mother admitted to having a criminal history involving substance use and manufacturing. Respondent-mother would not explain the details regarding the type of drug she manufactured. Further, respondent-mother admitted she was on parole for a conviction in another state, but she was non-compliant with the terms of her parole. Ervin also testified that respondent-mother had a history with CPS, which included the termination of her parental rights to her two older children. The trial court allowed the admission of the minor child's medical records and the orders regarding the termination of parental rights to the other two children. Ervin testified that respondent-mother failed to work with CPS, missing two scheduled family team meetings and the preliminary hearings in this case. Respondent-mother

would be hostile and upset, oftentimes hanging up on Ervin during their phone calls. As the case proceeded, respondent-mother was less and less cooperative. According to Ervin, respondent-mother had absconded from her parole and was arrested during the pretrial hearing. When respondent-mother still had the minor child in her care, CPS was concerned that the parents had taken the child and were avoiding CPS. At the time of the adjudication trial, the minor child was placed with her paternal aunt.

Amanda Lionas, the foster care supervisor for Samaritas, testified next at the adjudication trial. Lionas testified that, to her knowledge, the parents were planning together and living together. A worker visited the home the week before trial, but the worker was unable to complete a full home assessment, and her agency was unable to determine whether the home was appropriate for the minor child's return. Lionas was unable to verify the parents' incomes because respondent-mother refused to provide any documentation proving that both parents were receiving "some type of disability." On the morning of trial, Lionas had contacted respondent-mother multiple times, and respondent-mother claimed she was on her way to court. However, in her last conversation with Lionas, respondent-mother said she was not on her way to court, but was instead on her way to the police station to file a police report. According to Lionas, although respondent-mother was voluntarily attending parenting classes, she was not provided a treatment plan because a permanent custody petition was filed. Lionas testified that the home ultimately was deemed unsuitable because respondent-mother refused to allow the worker to access the basement during the visit. Furthermore, respondent-mother failed to provide any documentation proving she was allowed to live there.

During closing argument, counsel for DHHS argued that termination of respondent-mother's parental rights was appropriate under MCL 712A.19b(3)(g), (i), and (j). DHHS was, however, not pursuing termination under subsection (b)(*i*) because there was no evidence that the minor child suffered from withdrawal after she was born. The lawyer-guardian ad litem argued that termination was appropriate under subsections (b)(*i*), (b)(*ii*), (g), (i), and (j) because the evidence showed the minor child tested positive at birth for marijuana and cocaine, respondent-mother had numerous convictions that included selling illegal substances, the home was not suitable, and there was no proof that either parent was working or had an income.

The trial court explained that it would have been willing to consider an alternative to termination of respondent-mother's parental rights had she shown up to the trial or at least provided a reasonable excuse for her absence. Because this did not occur, the trial court summarized the circumstances that led to the filing of the petition, determined that a preponderance of the evidence supported taking jurisdiction over the minor child, and concluded that there was clear and convincing evidence supporting statutory grounds for termination under MCL 712A.19b(g) and (i). However, in making its decision, the trial court cited to the former versions of subsections (g) and (i), which were amended in June 2018. See MCL 712A.19b(3)(g) and (i), as amended by 2018 PA 58. Turning to the best interests of the child, the trial court explained that the court was willing to give respondent-mother a chance, "[b]ut with the outright lies that she's been telling the court, the fact that she's a mature woman at 36 years old, the fact that she continues to want to play games even though she could have -- she could lose her rights to [the minor child] all play against mother." For that reason, the trial court concluded that "the court does find by a preponderance of the evidence that at this time it's in the best interests of [the minor child] to terminate the rights of her mother." Thereafter, the trial

court entered an order terminating respondent-mother's parental rights under subsections (g) and (i). On appeal, respondent-mother argues that there is insufficient evidence to terminate her parental rights under subsections (g), (i), and (j). She further argues that termination was not in the best interests of her minor child.

## II. STANDARDS OF REVIEW

This Court will "review for clear error a trial court's factual findings as well as its ultimate determination that a statutory ground for termination of parental rights has been proved by clear and convincing evidence." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), citing MCR 3.977(J). The trial court's finding is clearly erroneous "if, although there is evidence to support it, [the reviewing court] is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). The trial court "must find that at least one of the statutory grounds set forth in MCL 712A.19b has been met by clear and convincing evidence." *In re Fried*, 266 Mich App 535, 540-541; 702 NW2d 192 (2005), citing *In re Terry*, 240 Mich App 14, 21-22; 610 NW2d 563 (2000). Questions of law such as the interpretation and application of statutes and court rules are reviewed de novo. *In re Mason*, 486 Mich at 152.

This Court reviews a trial court's decision for clear error regarding whether termination is in the child's best interests. *In re JK*, 468 Mich 202, 209; 661 NW2d 216, reh den 468 Mich 1239 (2003) (citation omitted). Whether termination of parental rights is in the child's best interest must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

## III. ANALYSIS

### A. STATUTORY GROUNDS

Respondent-mother first argues the trial court erred when it terminated her parental rights under MCL 712A.19b(3)(g), (i), and (j). We conclude that the trial court erred in its application of subsections (g) and (i) because it relied on a prior version of the statute. However, this error was harmless because termination under subsection (j) is proper.

In relevant part, MCL 712A.19b(3) states:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation

-4-

that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent. [MCL 712A.19b(3)(g), (i), and (j).]

Importantly, subsections (g) and (i) were amended on June 12, 2018, and the termination hearing was held on November 27, 2018. Therefore, the trial court should have considered the current version of the statute when it made its decision. However, the trial court cited the previous versions of subsections (g) and (i), which state:

 (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and prior attempts to rehabilitate the parents have been unsuccessful. [MCL 712A.19b(3)(g) and (i), as amended by 2018 PA 58.]

Because the trial court failed to apply the current versions of MCL 712A.19b(3)(g) and (i) to respondent-mother's termination hearing, it erred on these grounds. However, a trial court need only find clear and convincing evidence of one statutory ground under MCL 712A.19b(3) to terminate parental rights, *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011), and this Court will deem harmless any error regarding one statutory ground if there is sufficient evidence to terminate parental rights under another statutory ground, see *In re Jones*, 286 Mich App 126, 128-129; 777 NW2d 728 (2009) (concluding that even though there was insufficient evidence to terminate under MCL 712A.19b(*l*)—the only ground raised—it was harmless because termination was proper under subsection (m)). In this case, any error on the part of the trial court was harmless because termination under MCL 712A.19b(3)(j), which was raised and argued at trial, was appropriate.

The termination petition filed on behalf of DHHS cited subsection (j) as grounds for termination, claiming that return of the minor child to respondent-mother's care posed a reasonable likelihood of harm to the child. While DHHS argued this issue in its brief and at trial, the trial court did not make any findings as to subsection (j) at the trial or in its order. But because termination under subsection (j) would be proper, the trial court's error as to subsections (g) and (i) was harmless. The record supports a finding that respondent-mother's substance

abuse, criminality, and her lack of housing and income shows by clear and convincing evidence a reasonable likelihood that the minor child would be harmed if returned to her mother's care. The evidence showed that respondent-mother tested positive for marijuana four months into her pregnancy and that the minor child tested positive at birth for marijuana and cocaine. Moreover, respondent-mother admitted to her foster care worker that she was using and manufacturing illegal substances. Importantly, respondent-mother showed a complete unwillingness to work with DHHS and the foster care workers, refused to allow workers into the basement of her home, and failed to attend the majority of her court hearings. Considering respondent-mother's criminal history involving substance abuse, in conjunction with the fact that the minor child was born with drugs in her system, clear and convincing evidence supports a finding that there is a reasonable likelihood that the minor child would be harmed if returned to her home. Therefore, any error regarding subsections (g) and (i) was harmless.

## B. BEST INTERESTS

Respondent-mother also argues the trial court clearly erred when it concluded that termination was in the minor child's best interests. We hold that the trial court clearly erred when it concluded that termination of respondent-mother's parental rights was in the best interests of the minor child because it failed to expressly address relative placement as a factor in its best-interest analysis.

Once at least one statutory ground for termination has been proven, the trial court must conclude that termination is in the child's best interests before it can terminate parental rights. MCL 712A.19b(5); MCR 3.977. In considering whether termination of parental rights is in the best interests of the child, "the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citation omitted). This Court should also consider "the length of time the child was in care" and "the likelihood that 'the child could be returned to her parents' home within the foreseeable future." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205, quoting *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

"Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an 'explicit factor to consider in determining whether termination was in the children's best interests.' " *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012), quoting *In re Mason*, 486 Mich at 164 (citations omitted). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts Minors*, 297 Mich App at 43 (citations omitted).

In this case, the trial court's best-interest analysis is devoid of any consideration as to relative placement. Both the CPS caseworker and the foster care supervisor testified that AR was placed with the paternal aunt. However, the trial court did not acknowledge this placement when making its findings. This error alone is sufficient to require vacation of the termination

order. See *In re Olive/Metts Minors*, 297 Mich App at 43 (vacating the trial court's order in part and remanding for further proceedings because the court failed to expressly address relative placement). Additionally, we note that the trial court's best-interest analysis is entirely devoid of any discussion as to the remaining best-interest factors. On remand, we direct that the trial court fully address the best-interest factors when rendering its decision. We retain jurisdiction to ensure the prompt resolution of this matter.

Affirmed in part, vacated in part, and remanded for further proceedings. We retain jurisdiction.


/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel

# Court of Appeals, State of Michigan

## ORDER

In re A S Robertson Minor

Docket No.    348092

LC No.    18-000286-NA

Kathleen Jansen
Presiding Judge

Thomas C. Cameron

Jonathan Tukel
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and the proceedings shall be given priority on remand until they are concluded. As stated in the accompanying opinion, we remand to the trial court for consideration of the effect of the child's placement with a relative as it relates to the best-interest analysis and for consideration of all the best-interest factors. The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Kathleen Jansen

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

September 12, 2019
Date

Chief Clerk